## PEOPLE v POWELL

Docket No. 149351. Submitted December 15, 1992, at Lansing. Decided May 3, 1993, at 9:10 A.M.

Milton R. Powell was charged in the Jackson Circuit Court with possession of less than twenty-five grams of cocaine, possession of marijuana, and being a fourth-felony offender. Visiting Circuit Court Judge James T. Kallman granted the defendant's motion to suppress evidence, finding that, although the defendant originally had consented to a search, he subsequently had revoked his consent before the controlled substances were found. The people appealed by leave granted.

The Court of Appeals *held:*

1. Although a suspect cannot revoke retroactively consent to search with respect to evidence already discovered, further search may be halted at any time by revoking consent, absent a warrant or a recognized exception to the warrant requirement other than consent. Any evidence obtained after the consent to search is given and before it is revoked is admissible. In addition, the continued search on some other ground may be based in whole or in part upon evidence obtained by the police during the consensual portion of the search.

2. The court correctly determined that the evidence was not obtained during a consensual search.

3. The case must be remanded to the trial court for a determination whether the continued search of the defendant after he withdrew his consent was justified on the basis of probable cause and exigent circumstances, as alleged by the prosecution.

Affirmed in part and remanded.

SEARCHES AND SEIZURES — WITHOUT WARRANTS — CONSENSUAL
    SEARCHES — REVOCATION OF CONSENT.

A suspect may revoke consent to search at any time; however, the revocation does not invalidate the search already conducted, and any evidence obtained during the consensual por-

REFERENCES

Am Jur 2d, Searches and Seizures § 83 *et seq.*

See ALR Index under Search and Seizure.

tion of the search is admissible; once consent is revoked, the search must be ended unless it can be justified under a recognized exception to the warrant requirement other than the suspect's consent; evidence obtained during the consensual portion of the search may be considered in determining whether a continued search may be justified on some other basis.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Jerrold E. Schrotenboer,* Special Prosecuting Attorney, for the people.

*Dennis M. Hurst,* for the defendant.

Before: McDONALD, P.J., and GRIBBS and SAWYER, JJ.

SAWYER, J. Defendant was charged with possession of less than twenty-five grams of cocaine, MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v), possession of marijuana, MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d), and being a fourth-felony offender, MCL 769.12; MSA 28.1084. The trial court granted defendant's motion to suppress evidence, and the prosecutor appeals by leave granted. We affirm in part and remand in part.

On the night in question, a police officer, Richard Cook, saw defendant drive up to a curb in an area known for drug trafficking. Defendant was alone in the vehicle and kept the vehicle running. A young black male ran up behind the truck to the passenger side, opened the door, and leaned inside. He observed the officer and looked startled, then leaned into the truck once more, then quickly backed out and ran away. Officer Cook became suspicious and concluded that a drug transaction had occurred. Cook, however, did not see any exchange of drugs.

Cook followed defendant's vehicle, saw that it had no light over the license plate, and pulled

defendant over. Cook stated that he had no other reason for stopping defendant. Defendant produced his driver's licence, registration, and proof of insurance as requested. Cook also asked him if he had any guns, knives, or drugs, and defendant replied, "No." Cook then asked defendant, "Well, you wouldn't mind if I checked, right?" Defendant again said, "No," and got out of the truck with his hands up. Cook conducted a patdown search of defendant. He found nothing to suggest a weapon, but he felt small bulges in defendant's pocket and heard the sound of plastic bags. Cook asked defendant what was in his pocket, and defendant replied, "Nothing." Cook started to place his hand into defendant's pocket, but defendant pulled away, stating, "No, no, you need a warrant for that." Cook continued the search of defendant and retrieved two small sandwich-size plastic bags containing marijuana and a cellophane cigarette wrapper with five rocks of cocaine from defendant's pocket.

Defendant moved in the circuit court to suppress the evidence, and the court concluded that the search was illegal because defendant had revoked his consent. Accordingly, the court suppressed the evidence seized from defendant.

We turn first to the question whether there was a valid consent search. The prosecutor argues that defendant consented to be searched and that once consent is given it cannot be revoked. We disagree.

The question whether a person can revoke a consent to search once it is given does not appear to have been squarely addressed in Michigan. Two criminal cases, *People v Malone,* 180 Mich App 347, 356; 447 NW2d 157 (1989), and *People v Gallagher,* 55 Mich App 613, 617; 223 NW2d 92 (1974), made the observation that a consent to search could be revoked. However, neither of those

cases directly involved the question whether consent to search can be revoked, merely making the observation that the consent to search could have been revoked, but was not. On the other hand, this Court did state in a civil case, *Tope v Howe,* 179 Mich App 91, 104-105; 445 NW2d 452 (1989), that consent once given cannot be revoked. *Tope* involved a suit for false arrest where the plaintiff was arrested in her home without a warrant. However, the police had been given consent to enter the home and made the arrest following questioning. Although at some point during the questioning the officer was asked whether he had a search warrant to enter the apartment, the officer testified that they were never asked to leave the premises. Thus, the situation in *Tope* is different from that presented here.

The question whether a police officer may make an arrest without a warrant in a suspect's home where he has been voluntarily admitted into the home is very much different than the question whether an officer can continue a search after the consent to search has been revoked. In the former case, the suspect certainly cannot complain that he was arrested without a warrant merely because of the fact that the arrest occurred within the home, because the suspect voluntarily admitted the officer into his home.[1] That presents a case of trying to "unring the bell." Once the officers were voluntarily admitted, any argument based upon their entry without a warrant is lost.

In the context of a search, however, the question

---

[1] Certainly, the suspect could raise any other arguments he may have concerning the lawfulness of the arrest, such as the existence of probable cause, but could not be heard to complain that the officer had made an entry into the home without a warrant in order to effectuate the arrest. Though, arguably, if the officer was asked to leave the premises, he would at that point have to make a decision either to leave or to effectuate an arrest and leave with the defendant in custody.

is different because it involves not one act by the officers (entry into a domicile) but their ongoing conduct of conducting a search. Although a suspect cannot "unring the bell" for a search (i.e., cannot retroactively revoke the consent to search with respect to evidence already discovered), the prevailing view is that the search may be halted at any time by revoking consent, precluding further searching by the police absent a warrant or a recognized exception to the warrant requirement other than consent. Despite the rather broad statement in *Tope, supra* at 105, that consent can never be revoked, which was made without citation to relevant authority or consideration of *Gallagher, supra,* we believe that *Tope* can be harmonized with the general rule: although a suspect cannot retroactively revoke the consent and complain of the conduct by the police pursuant to that consent before it is revoked, the suspect can revoke the consent and halt further police activity that relies upon the consent.[2]

The prevailing view regarding the right to revoke a consent to search was summarized by the Iowa Supreme Court in *State v Myer,* 441 NW2d 762, 765 (Iowa, 1989):

> In conducting any consent search, the authorities are limited by the terms of the consent. *See* [*Schneckloth v Bustamonte,* 412 US 218, 222; 93 S Ct 2041; 36 L Ed 2d 854 (1973)] (the right of the officers to search is only coextensive with the particular search consented to). Consent may be

---

[2] We note that this Court in *People v Harris,* unpublished opinion per curiam, decided September 6, 1991 (Docket No. 135115), did cite *Tope* for the proposition that once consent to search is given it cannot be revoked. We believe that the *Harris* panel gave *Tope* an unduly broad reading and, for the reasons discussed in this opinion, that conclusion is not consistent with the prevailing view of law. As an unpublished opinion, *Harris* is not binding precedent, MCR 7.215(C) (1), and we decline to follow it.

withdrawn or limited at any time prior to the completion of the search. *United States v Milian-Rodriguez,* 759 F2d 1558, 1563 [CA 11, 1985], *cert denied,* 474 US 845; 106 S Ct 135; 88 L Ed 2d 112 (1985). However, a revocation of consent does not operate retroactively to render unreasonable that search conducted prior to the time of revocation. *See Jones v Berry,* 722 F2d 443, 449 n 9 [CA 9, 1983], *cert denied,* 466 US 971; 104 S Ct 2343; 80 L Ed 2d 817 (1984); *United States v Black,* 675 F2d 129, 138 [CA 7, 1982], *cert denied,* 460 US 1068; 103 S Ct 1520; 75 L Ed 2d 945 (1983); 3W LaFave, *Search and · Seizure: A Treatise on the Fourth Amendment* § 8.1(c) at 173 (2d ed 1987); *see also State v Johns,* 679 SW2d 253, 262 (Mo, 1984) (en banc) ("We reject the notion one can revoke his or her consent to a search after incriminating evidence has been discovered."), *cert den sub nom Johns v Missouri,* 470 US 1034; 105 S Ct 1413; 84 L Ed 2d 796 (1985).

See also *Black, supra* (consent to search can be withdrawn); *United States v Ward,* 576 F2d 243 (CA 9, 1978); *United States v Seely,* 570 F2d 322, 323 (CA 10, 1978) (the defendant revoked his consent to search after his attorney "correctly advised that since the only authority for the search was his consent he could terminate it at will"); *Mason v Pulliam,* 557 F2d 426, 428-429 (CA 5, 1977); *State v Rusho,* 110 Idaho App 556, 560; 716 P2d 1328 (1986). Although the prosecutor does point to contrary authority,[3] we believe that the above represents the prevailing view and, more importantly, the correct view.

The United States Supreme Court has noted that a suspect may limit the scope of the consent given to conduct a search. *Florida v Jimeno,* 500 US —, —; 111 S Ct 1801; 114 L Ed 2d 297, 303

[3] See *Gray v State,* 441 A2d 209, 221 (Del, 1982); *People v Kennard,* 175 Colo 479, 481; 488 P2d 563 (1971); *Smith v Commonwealth,* 197 Ky 192; 246 SW 449 (1923).

(1991). If a suspect can limit the scope of the consent to search at the beginning, then it follows he should be permitted to limit the scope of the search after the search has begun. Perhaps the suspect will revoke the consent to search because discovery of evidence or contraband is imminent, but the police are certainly in no worse position than had the suspect not consented at all. Moreover, there may also exist other reasons that a suspect may choose to revoke the consent to search once given. For example, in *Seely* the defendant's revocation of the consent to search occurred after one of the officers was obnoxious to him.

Similarly, a suspect may choose to revoke the consent to search when the time taken by the officers to conduct the search becomes excessive in the suspect's eyes. In *Mason,* for example, which involved a suit against an Internal Revenue Service agent, the plaintiff delivered business records to the defendant and a week later demanded their return. The *Mason* court also discussed other cases in which the searches perhaps went beyond the scope or length originally intended by the suspects. *Mason, supra* at 428-429.

Indeed, a suspect may wish to terminate a search in which the scope of the search envisioned by the police proves to be greater than the scope of the search to which the suspect intended to consent. For example, a suspect pulled over for a traffic stop may be willing to consent to a patdown search, but wish to stop the search when the officers go beyond the patdown search and proceed to search the vehicle. Similarly, a person may be willing to allow the police into his house to "look around," envisioning a brief, cursory inspection by the police, yet stop the search when it becomes

apparent that the search will be detailed and time consuming. Although these latter two examples may raise questions whether the police exceeded the scope of consent originally granted, it also seems reasonable to us that a suspect should be permitted to terminate a search once he does realize how great a burden the search to which he consented will impose. For that matter, the suspect may merely realize after the search has begun that giving consent was ill-advised and that he would be better served to invoke his constitutional rights and withdraw the consent to search. A similar situation that is not at all uncommon is where suspects originally agree to make a statement to the police and partway through the interrogation decide that it may be better if they say nothing further.

Of course, as the above cases point out, just as the suspect who chooses to make a statement and stops cannot take back those things he said before invoking his right to remain silent, neither can the suspect who gives a consent to search and then revokes that consent deprive the police of any evidence obtained during the course of the consent search. That is, the consent cannot be revoked retroactively. Thus, any evidence obtained after the consent to search was given and before it was revoked remains admissible. Moreover, if the police have a legitimate basis for conducting a search without a warrant under some recognized exception to the warrant requirement other than a consent search, they may, of course, continue the search after the consent has been withdrawn because they are no longer relying on that consent as a justification for the search. Moreover, that continued search on some other ground may be based in whole or in part upon evidence obtained

by the police during the course of the consent search.[4]

This then brings us to the other issue raised by the prosecutor on appeal, namely, whether the continued search of defendant was justified on the basis of probable cause and exigent circumstances. However, because this issue was not addressed by the trial court, we decline to address it on appeal. Rather, we remand the matter to the trial court to address the issue whether the evidence is admissible on this basis. We reiterate that, in addressing the issue, the court may consider any evidence obtained by the police or observations made by the police during the consent search before defendant revoked his consent. That is, the trial court must look at all facts existing at the time defendant revoked his consent and determine on the basis of the facts then existing whether a continued search of defendant was justified by the exception to the warrant requirement proffered by the prosecutor.

In sum, we hold that a suspect may revoke his consent to search at any time. The revocation of the consent to search, however, does not invalidate the search conducted pursuant to the valid consent of the suspect before that consent was revoked. Any evidence obtained during the consensual portion of that search is admissible. However, once the consent is revoked, the police must stop the search unless continuing the search may be justified under some basis other than the suspect's

[4] For example, if the police obtain contraband during the course of a consent search, they may arrest the suspect. They may then conduct a search incident to the arrest, even though the suspect may have withdrawn his consent to search after the discovery of the contraband. The contraband would be admissible because it was discovered before the withdrawal of the consent and the arrest would be proper because of the discovery of the contraband. The continued search after the withdrawal of consent would be proper because it no longer would be based upon the consent to search, but upon the doctrine that allows searches incident to arrest.

consent. Finally, any evidence obtained during the consensual portion of the search may be considered in determining whether a continued search may be justified on some other basis.

The decision of the trial court that the evidence was not properly obtained as the result of a consensual search is affirmed, but the matter is remanded to the trial court for consideration of the prosecutor's argument that the evidence was admissible under the exigent circumstances exception to the warrant requirement. We do not retain jurisdiction.

Affirmed in part and remanded.