# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY SUE LAVIGNE and DIANE K. LAVIGNE,

        Plaintiffs-Appellants,

v

KRISTI FORSHEE,

        Defendant-Appellee,

and

ERIC LEONARD,

        Defendant.

FOR PUBLICATION
October 28, 2014
9:10 a.m.

No.   312530
Gratiot Circuit Court
LC No.   11-011653-NO

Before:  SHAPIRO, P.J., and MARKEY and STEPHENS, JJ.

PER CURIAM.

      Plaintiffs Diane Lavigne and Kimberly Lavigne, mother and daughter respectively,[1] appeal by right the trial court's order granting defendants' motion summary disposition under MCR 2.116(C)(10) with respect plaintiffs' action under 42 USC 1983 asserting that defendants violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.[2] We reverse and remand for further proceedings.

## I.

### A. SUMMARY OF FACTUAL AND LEGAL CLAIMS

---

[1] For the sake of clarity, reference to the individual plaintiffs will be by their first name.

[2] Plaintiffs have not appealed the dismissal of their state law tort claims and have resolved their dispute with Deputy Eric Leonard.  By stipulation, plaintiffs' appeal of the trial court's order regarding defendant Leonard has been dismissed with prejudice.  *Lavigne v Forshee*, unpublished order of the Court of Appeals, entered February 28, 2013 (Docket No. 312530).

Plaintiffs allege in their 42 USC 1983 claim that Detective Kristee Forshee and Deputy Eric Leonard violated their Fourth Amendment rights by unreasonably searching their home on September 29, 2010, without a warrant, probable cause, or consent. Plaintiffs assert that the search was plainly unreasonable because it was the product of police coercion, rather than voluntary consent. Defendant Forshee argued that because she believed plaintiffs had consented to the officers' entry into their home, she did not violate plaintiffs' Fourth Amendment rights, or alternatively that she was entitled to qualified immunity because her conduct did not evince plain incompetence or a blatant disregard for plaintiffs' constitutional rights.

According to Officer Forshee, the police were investigating an anonymous tip that Kimberly was growing marijuana in her residence and unlawfully selling it to high school students. The day before the entry, the police had stopped at the home to talk to Kimberly, but were told she was out shopping. The next morning, officers retrieved several trash bags from the end of the home's driveway. Inside they discovered suspected marijuana stems, branches, and "roaches." Deputy Leonard testified that when he informed the prosecutor about the anonymous tip and the results of the "trash pull," the prosecutor stated that although he believed the officers had gathered sufficient information to seek a search warrant, he recommended that the officers attempt to obtain consent for a search through a "knock and talk" procedure.

Forshee asserted that she went to plaintiffs' home with Deputy Leonard and uniformed officer Robert Morningstar. The officers were greeted by Diane, and because she and Leonard were dressed in plain clothes, they identified themselves as police officers. Forshee stated that she and Leonard had also affixed their badges to their sweatshirts. Diane came outside and told the officers that Kimberly was not at home but that she would telephone her. Forshee testified that before Diane reentered the home to obtain a phone to call Kimberly, Forshee asked if she could follow Diane inside for the officers' safety. Diane, however, did not respond. Forshee claimed that she stood in the threshold of the doorway, between the outer storm door and the inner main door, while Diane walked to a nearby table to retrieve a phone. Kimberly, who was actually in the home, then approached them. Forshee testified that neither Diane nor Kimberly asked the officers to leave the home or objected to her entry. Forshee also testified that she spoke to Kimberly regarding the marijuana complaint and that Kimberly asserted she had a medical exemption, offering to show Forshee the grow operation in her room. Forshee asserted that she asked to follow Kimberly upstairs to her room for the purpose of officer safety after Kimberly asked to change out of her pajamas. For these reasons, Forshee testified that she believed plaintiffs had consented to her entry into the residence and that Kimberly consented to being followed upstairs to inspect the marijuana grow operation.

In their depositions, Leonard and Morningstar substantially corroborated Forshee's testimony. But, although Leonard testified that before entering the home Morningstar was on the porch next to him, who in turn was standing next to Forshee, Morningstar testified that he was not on the porch and was too far away to hear any conversations between Diane, Leonard, and Forshee before entry. Leonard further asserted that Diane opened the outer door and entered the home after Forshee asked to follow her into the home.

Kimberly testified that she heard the officers ask Diane to get a phone to call Kimberly and also heard Diane tell the officers that she would do so and return immediately. Kimberly claimed that Forshee entered the home behind Diane by opening the door and then she heard the

screen door shut. Kimberly testified that she specifically told Forshee, Leonard, and (later) a third officer in uniform (Morningstar) to leave because they did not have permission to enter the home and did not have a warrant. Kimberly claimed that the officers refused, based on claims of officer safety, to leave the home and get a warrant, and also told her they did not need a warrant to enter and search the home because of the drug dealing complaint. Kimberly contends that Forshee demanded to follow her upstairs and to see her marijuana grow operation. After waiting five minutes for the police to leave, Kimberly conceded and went upstairs to get the medical marijuana paperwork because she wanted the officers to leave. Kimberly contends that she was under duress when she unlocked the spare bedroom upstairs and allowed Forshee to enter and examine her grow operation.

Diane testified that Forshee and Leonard were dressed in plain clothes and did not immediately inform her that they were police officers when she went to the door. She also denied seeing either officer wearing a police badge, but conceded that Forshee and Leonard informed her that they were officers after telling her that she "cannot go into the house without us." Diane offered to call Kimberly after telling the officers that Kimberly was not home. According to Diane, the officers followed her into the home before the screen door closed behind her. Diane testified that the officers proceeded into the dining room area, where Kimberly approached them and introduced herself. Diane said that Forshee asked to see Kimberly's medical marijuana card, and that Kimberly said that it was upstairs. Diane asserted that Kimberly asked the officers whether they had a warrant. She noted that Forshee would not allow Kimberly to retrieve her medical marijuana card by herself, and that Forshee demanded to see her "plants." When asked, Diane did not recall Kimberly saying anything else to the officers.

Forshee further testified that all three officers left the residence after she inspected the marijuana grow operation, and that Kimberly eventually showed Forshee her medical marijuana paperwork that was located in her vehicle. Forshee denied any subsequent involvement or intentional contact with plaintiffs since the September 29 knock and talk. Criminal charges were not filed against either plaintiff as a result of the incident.

## B. THE TRIAL COURT'S RULING

After oral arguments on defendants' motion for summary disposition under MCR 2.116(C)(10), the trial court granted the motion on all plaintiffs' claims. The trial court ruled that plaintiffs could not prevail because the record undisputedly established that the officers had consent to enter the home; consequently, the officers did not violate plaintiffs' Fourth Amendment rights against unreasonable searches and seizures. The court further ruled that Forshee's claim of qualified immunity was moot, although opining it would likely apply.

## II

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Under MCR 2.116(C)(10), the motion is properly granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "Whether a defendant

is entitled to qualified immunity is a question of law that we review de novo." *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007).

In a motion for summary disposition under MCR 2.116(C)(10), the moving party must specifically identify the issues for which no factual dispute exists, and must support this claim with evidence such as affidavits, depositions, admissions, or other documents. MCR 2.116(G)(4); *Coblentz v Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). If the moving party meets its initial burden, the opposing party then has the burden of showing with evidentiary materials the substance of which would be admissible that a genuine issue of disputed material fact exists. *Id.*; *Bronson Methodist Hosp v Home-Owners Ins Co*, 295 Mich App 431, 440-441; 814 NW2d 670 (2012); MCR 2.116(G)(6). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, leaves open a matter on which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). When deciding a motion for summary disposition, a court may not decide disputed factual issues. *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).

B. ANALYSIS

1. CONSENT

42 USC 1983 provides that a person is liable in an action at law if that person "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." The statute "itself is not the source of substantive rights; it merely provides a remedy for the violation of rights guaranteed by the federal constitution or federal statutes." *York v Detroit (After Remand)*, 438 Mich 744, 757-758; 475 NW2d 346 (1991). The federal right at issue in this case is that provided by the Fourth Amendment of the United States Constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." See *People v Kazmierczak*, 461 Mich 411, 417, n 3; 605 NW2d 667 (2000). The Fourth Amendment's prohibition of unreasonable searches protects people as opposed to just places or areas. *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011). When the government infringes an individual's reasonable or justifiable expectation of privacy, a search for purposes of the Fourth Amendment has occurred. *Id.* at 195. With respect to expectations of privacy, a person's home is at the very core of the Fourth Amendment and the zone of privacy is most clearly defined when bounded by its physical dimensions. *People v Slaughter*, 489 Mich 302, 319; 803 NW2d 171 (2011).

The Fourth Amendment prohibits only unreasonable searches. *Id.* at 311. In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996); *People v Snider*, 239 Mich App 393, 406-407; 608 NW2d 502 (2000). There are, however, several well-defined exceptions to the Fourth Amendment's warrant requirement. *Slaughter*, 489 Mich at 311-312; *Champion*, 452 Mich at 98. Consent is the exception to the warrant requirement on which defendants relied and the trial court granted summary disposition. See *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999) ("One established exception to the general warrant and probable cause

-4-

requirements is a search conducted pursuant to consent."). "The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). Whether consent to search is freely and voluntarily given presents a question of fact that must be determined on the basis of the totality of the circumstances; the presence of coercion or duress will militate against a finding of voluntariness. *Borchard-Ruhland*, 460 Mich at 294.

In this case, the police used a law enforcement tactic known as "knock and talk" for the purpose of investigating suspected wrongdoing. *Frohriep*, 247 Mich App at 697. Generally, this procedure would be used when the police lack probable cause sufficient to obtain a search warrant so they "approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items." *Id*. While this tactic does not violate constitutional protections, a citizen's "right to be free of unreasonable searches and seizures may be implicated where a person, under particular circumstances, does not feel free to leave or where consent to search is coerced." *Id*. at 698. As a result, simply characterizing police conduct as a "knock and talk" does not eliminate the Fourth Amendment's protections against unreasonable searches and seizures. *People v Galloway*, 259 Mich App 634, 642; 675 NW2d 883 (2003). When the tactic is used, "ordinary rules that govern police conduct must be applied to the circumstances of the particular case." *Frohriep*, 247 Mich App at 698-699.

Plaintiffs must establish to prove their § 1983 claim that (1) defendants acted under color of state law and (2) that defendants' conduct deprived plaintiffs of a federal right—the Fourth Amendment's protection against unreasonable searches and seizures. *Davis v Wayne Co Sheriff*, 201 Mich App 572, 576-577; 507 NW2d 751 (1993). At the summary disposition stage, the issue is whether plaintiffs have demonstrated that at a genuine issue of material fact exists as to each of these elements. *Morden*, 275 Mich App at 332. It is undisputed that defendants were acting under color of state law and that they did not have a warrant when they entered defendants' home. So, the question becomes whether the undisputed facts established an exception to the warrant requirement, i.e., on the facts of this case, whether plaintiffs freely and voluntarily consented to defendants entering and searching their home.

We conclude that this case is rife with material questions of fact as to whether plaintiffs freely and voluntarily consented to defendants' entry and search of their home. Furthermore, even if valid consent was granted, questions of material fact exist regarding the scope of the consent granted and whether consent was subsequently revoked. Because questions of material fact remain for the trier of fact regarding plaintiffs' § 1983 claim, specifically regarding defendants' claim of consent, the trial court erred by granting defendants' summary disposition. *Morden*, 275 Mich App at 332; *Burkhardt*, 260 Mich App at 646-647.

The consent necessary to justify a search must be obtained "from the person whose property is being searched or from a third party who possesses common authority over the property." *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008). Here, the police initially contacted Diane, whom the facts suggest the police could form an objectively reasonable belief possessed the authority to grant defendants consent to enter the house. *Id*. Nevertheless, the evidence, viewed in a light most favorable to plaintiffs, leaves open questions of material fact whether Diane's alleged "consent [was] unequivocal, specific, and freely and intelligently

-5-

given." *Frohriep*, 247 Mich App at 702. Indeed, questions of material fact exist whether the alleged consent was "the result of duress or coercion, express or implied." *Schneckloth v Bustamonte*, 412 US 218, 248; 93 S Ct 2041; 36 L Ed 2d 854 (1973). While voluntary consent may be given may be given in the form of "words, gesture, or conduct," *United States v Carter*, 378 F3d 584, 587 (CA 6, 2004), it cannot be established "'by showing no more than acquiescence to a claim of lawful authority.'" *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999), quoting *Bumper v North Carolina*, 391 US 543, 548-549; 88 S Ct 1788; 20 L Ed 2d 797 (1968).[3]

Further, even if Diane voluntarily consented to defendants' initial entry to the home, questions of material fact remain whether any consent that was granted was thereafter revoked. This Court has observed that "the consent of a third party does not render a search valid if [another] party is present and expressly objects to the search." *Brown*, 279 Mich App at 131-132. Further, "consent may be limited in scope and may be revoked." *Frohriep*, 247 Mich App at 703, citing *People v Powell*, 199 Mich App 492, 496-499; 502 NW2d 353 (1993). So, even if the fact finder determined that Diane validly consented to a limited entry for the purpose of officer safety while Diane telephoned Kimberly, Kimberly revoked that consent, if her testimony is believed, after she made her presence known. Moreover, even if Kimberly's testimony regarding revocation of consent in her initial contact with the officers is not believed, questions of material fact remain whether the subsequent upstairs bedroom search was the result of coercion based on Forshee's claim of lawful authority to act without a warrant. The Fourth Amendment requires defendants establish that "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth*, 412 US at 248. This burden is not met by showing mere acquiescence to claims lawful authority. *Farrow*, 461 Mich at 207-208; *People v Chowdhury*, 285 Mich App 509, 524-526; 775 NW2d 845 (2009). The trial court erred by granting defendants' summary disposition because questions of material fact remain regarding whether either Diane or Kimberly voluntarily consented to the search, whether if consent was granted it was revoked, and whether consent was coerced by claims of lawful authority to act without a warrant. *Allison*, 481 Mich at 425; *Morden*, 275 Mich App at 332.

## 2. QUALIFIED IMMUNITY

Defendant Forshee argues that the trial court should be affirmed on the alternative basis that qualified immunity shields her from plaintiffs' § 1983 claim. A police officer may invoke the defense of qualified immunity to avoid the burden of standing trial when faced with a claim that the officer violated a person's constitutional rights. *Walsh v Taylor*, 263 Mich App 618, 635; 689 NW2d 506 (2004). Although nominated an affirmative defense that must be pleaded, *Harlow v Fitzgerald*, 457 US 800, 815; 102 S Ct 2727; 73 L Ed 2d 396 (1982), a plaintiff has the

---

[3] Although both *Farrow* and *Bumper* determined that consent cannot be voluntary when given in response a police claim of a bogus warrant, the principles discussed in those cases apply by analogy to a situation where the police assert they have lawful authority to enter the home without a warrant under the guise of officer safety. See *People v Chowdhury*, 285 Mich App 509, 524-526; 775 NW2d 845 (2009).

burden of overcoming the assertion of qualified immunity at the pretrial sage, *Pearson v Callahan*, 555 US 223, 231-232; 129 S Ct 808; 172 L Ed 2d 565 (2009). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 231, quoting *Harlow*, 457 US at 818. Thus, in the case of a police officer, qualified immunity will not apply if the officer transgresses a right that was "clearly established," when "'it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted.'" *Groh v Ramirez*, 540 US 551, 558-559, 563; 124 S Ct 1284; 157 L Ed 2d 1068 (2004), quoting *Saucier v Katz*, 533 US 194, 202; 121 S Ct 2151; 150 L Ed 2d 272 (2001); see also *Walsh*, 263 Mich App at 636. When the law is clearly established, "the immunity defense ordinarily should fail, since a reasonably competent [police officer] should know the law governing his [or her] conduct." *Harlow*, 457 US at 818-819.

Defendant Forshee does not dispute that the law is clearly established that the police cannot make a warrantless entry into a home unless a recognized exception to the Fourth Amendment's warrant requirement exists. She relies solely on consent, which clearly established law requires must be "voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth*, 412 US at 248; *People v Lumpkin (On Remand)*, 64 Mich App 123, 125-126; 235 NW2d 166 (1975). Forshee's argument rests on two principles. First, voluntary consent to search may be granted by conduct. See *Carter*, 378 F3d at 587. Second, "qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 US at 231, quoting *Groh*, 540 US at 567 (KENNEDY, J., *dissenting*). Forshee splices these principles together to argue that she is entitled to qualified immunity because, at worst, she mistook Diane's conduct for consent when "Diane opened the door and walked in the house, allowing the officers to follow in behind her, without telling them they could not enter."

We find Forshee's claim of qualified immunity wanting. First, as discussed already, from the evidence viewed in the light most favorable to plaintiffs, a reasonable jury could conclude that Diane did no more than acquiesce to Forshee's claim of lawful authority to accompany Diane inside the house for the purpose of officer safety. As discussed already, the law is clearly established that voluntary consent cannot be established "'by showing no more than acquiescence to a claim of lawful authority.'" *Farrow*, 461 Mich at 208; quoting *Bumper*, 391 US at 548-549. In each of the cited cases, the police used an invalid or non-existent warrant to conduct a search that was later claimed valid on the basis of consent. These cases hold that "'[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search.'" *Id*. In such a situation, consent is not voluntary but coerced by the officer's claim of lawful authority. *Bumper*, 391 US at 549-550. A reasonably competent police officer should know that voluntary consent cannot be inferred from mere non-verbal acquiescence to an officer's claim that the officer has the lawful authority to enter the home and conduct a search in the absence of warrant. For this reason, we conclude that Forshee's claim of qualified immunity fails. See *Harlow*, 457 US at 818-819; see also *Guider v Smith*, 431 Mich 559, 568; 431 NW2d 819 (1988).

Forshee's argument for qualified immunity also does not address Kimberly's claim to have revoked any consent for the officer's entry into the home that Diane may have communicated by her conduct. At the time of the search, under clearly established law, once

voluntarily granted, consent may subsequently be revoked at any time. See *Powell*, 199 Mich App at 496-498. So, if Kimberly's testimony regarding revoking any consent that Diane may have granted is believed, defendant Forshee is not entitled to qualified immunity for remaining in the home and the subsequent warrantless search she conducted. Again, if the trier of fact believes Kimberly's testimony, no reasonable officer in such a situation could believe that remaining in the home and conducting further searches was lawful. *Groh*, 540 US at 563. We also note this is not a case in which police officers are accorded latitude to act without a warrant, such as when presented with exigent circumstances,[4] or affecting a lawful arrest,[5] or executing a lawfully issued search warrant,[6] or possessing particularized reasons to fear for their safety.[7] See *Groh*, 540 US at 565, n 9. Rather, voluntary consent is the only asserted justification for the officers' intrusion on the core protection of the Fourth Amendment—the right a person to retreat into his own home and be free from unreasonable searches and seizure. *Id*. at 558-559. For all these reasons, we find that Forshee is not entitled to qualified immunity.

We reverse and remand for further proceedings. We do not retain jurisdiction. As the prevailing party, appellant may tax costs pursuant to MCR 7.219.


/s/ Douglas B. Shapiro
/s/ Jane E. Markey
/s/ Cynthia Diane Stephens

---

[4] *Chowdhury*, 285 Mich App at 526; *Snider*, 239 Mich App at 408.

[5] *Arizona v Gant*, 556 US 332, 335; 129 S Ct 1710; 173 L Ed 2d 485 (2009).

[6] *People v Zuccarini*, 172 Mich App 11, 13-14; 431 NW2d 446 (1988).

[7] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *Champion*, 452 Mich at 98-99.