# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ZORAN,

        Plaintiff-Appellant,

and

KYLE SUNDAY and AUSTIN ADAMS,

        Plaintiffs-Cross-Appellants,

v

TOWNSHIP OF COTTRELLVILLE and KELLY
ANN LISCO, also known as KELLY ANN
FISCELLI-LISCO, also known as KELLY ANN
FISCELLI,

        Defendants-Appellees/Cross-
        Appellees.

UNPUBLISHED
August 25, 2015

No. 323225
St. Clair Circuit Court
LC No. 13-001841-CZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Plaintiff-appellant appeals as of right the order denying plaintiffs' motion for summary disposition and granting summary disposition in favor of defendants on the issue of defendant Kelly Ann Lisco's (Lisco) personal liability under the Open Meetings Act (OMA), MCL 15.261 *et seq*. Plaintiffs-cross-appellants cross-appeal from the same order. We reverse and remand.

## I. FACTS

This case arises from a board meeting of defendant Township of Cottrellville (Cottrellville). Plaintiff Michael Zoran (Zoran) is a trustee on the Cottrellville Board of Trustees (the board). The Cottrellville Public Participation Policy (the policy) provides that an individual may speak for three minutes during the public comments portion of a board meeting. During the May 8, 2013 board meeting, Lisco, the supervisor of Cottrellville, prevented Zoran and plaintiffs Austin Adams (Adams) and Kyle Sunday (Sunday) from speaking for the full three-minute period during the public comments portion of the board meeting. Lisco stopped Adams's speech because he refused to provide his address before speaking. Lisco stopped Sunday from speaking

-1-

approximately one minute after Sunday questioned Lisco regarding pending criminal charges against her. Lisco stated during her deposition that she was unaware of the fact that she stopped Adams and Zoran from speaking before the three minutes had elapsed. She explained that she stopped Sunday from speaking because she believed he was verbally attacking her in a personal manner.

## II. QUO WARRANTO

Zoran argues that the trial court abused its discretion when it refused to grant his application to file an action for quo warranto. Specifically, Zoran sought to add a quo warranto count to the already-pending OMA action, which he contends the trial court should have permitted. We agree.

"A trial court's decision whether to grant a citizen's application for leave to proceed by quo warranto is reviewed for an abuse of discretion." *Hanlin v Saugatuck Twp*, 299 Mich App 233, 238; 829 NW2d 335 (2013). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. A trial court's findings of fact are reviewed for clear error. *Davis v Chatman*, 292 Mich App 603, 619; 808 NW2d 555 (2011). A finding of fact is clearly erroneous when this Court "is left with a definite and firm conviction that a mistake was made." *Id*. In addition, "[i]ssues of statutory interpretation are reviewed de novo." *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133; 860 NW2d 51 (2014).

"Quo warranto is a common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." *Hanlin*, 299 Mich App at 240 (citations and quotation marks omitted). "A trial court properly denies an application to proceed by quo warranto when the application fails to disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry." *Id*. at 238. "[T]he most important considerations in granting leave to file quo warranto are (1) whether an appropriate application was made to the Attorney General and (2) whether the application disclosed sufficient apparent merit to justify further inquiry by quo warranto proceedings." *Davis*, 292 Mich App at 613.

MCL 600.4501 provides, "The attorney general shall bring an action for quo warranto when the facts clearly warrant the bringing of that action. If the attorney general receives information from a private party and refuses to act, that private party may bring the action upon leave of court." See also MCR 3.306(3)(b) (providing that a citizen may apply for leave to proceed by quo warranto when the attorney general refused to bring the action). Before filing a motion to proceed by quo warranto, Zoran requested that the Attorney General institute a quo warranto action under MCR 3.306 on the basis that Lisco did not reside in Cottrellville. In a letter to Zoran, the Attorney General explained, "I am not persuaded that the circumstances warrant participation by this office." The Attorney General declined to institute a quo warranto proceeding against Lisco. Thus, Zoran properly satisfied the prerequisites to apply for leave to proceed by quo warranto in the trial court. See MCL 600.4501; MCR 3.306(3)(b).

Zoran requested leave to file a quo warranto claim against Lisco under MCL 201.3(4). MCL 201.3(4) provides that an office becomes vacant upon the official's "ceasing to be an inhabitant of this state; or, if the office be local, of the district, county, township, city, or village,

for which [she] shall have been appointed, or within which the duties of [her] office are required to be discharged." See also MCL 41.57 (proving that a township office becomes vacant when an event listed in MCL 201.3 occurs). MCL 8.3 provides that "[i]n the construction of the statutes of this state, the rules stated in [MCL 8.3a to MCL 8.3w] shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature." MCL 8.3f provides, "The word 'inhabitant' means a resident of a city, township, village, district or county."

Since the statute does not define the term "resident," it is proper to consult the dictionary definition of the term. See *Okrie v Michigan*, 306 Mich App 445, 462 n 19; 857 NW2d 254 (2014) (noting that this Court examines the dictionary definition of a term when the term is undefined). *Merriam-Webster's Collegiate Dictionary* (2014) defines "resident" as "one who resides in a place." The term "reside" is defined as "to dwell permanently or continuously: occupy a place as one's legal domicile." *Id.* The term "dwell" is defined in this context as "to remain for a time," "to live as a resident," and to "exist, lie." *Id.*

Additionally, the Michigan Supreme Court and this Court have explained in other contexts that the term "residence" constitutes a place of abode along with the intent to remain. See, e.g., *In re Scheyer's Estate*, 336 Mich 645, 651; 59 NW2d 33 (1953) (defining residence in the context of a will contest); *Kar v Nanda*, 291 Mich App 284, 288-289; 805 NW2d 609 (2011) (applying the definition in the context of the residency requirement in a divorce action). " 'Residence means the place where one resides; an abode; a dwelling or habitation; especially, a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining.' " *Kar*, 291 Mich App at 288-289 (citation and quotation marks omitted). In determining whether there was in fact a violation of the statute we must look at these two factors.

During a plea hearing on May 22, 2013, Lisco pled guilty to providing false information on a permit application. MCL 257.315(4). During her hearing Lisco acknowledged that she had sold her home, and she and her husband were in the process of building a residence on the Cottrellville property, but she did not live there yet. During the trial court's hearing on the defendant's motion for summary disposition the court acknowledged that Lisco "may have been temporarily residing in the City of Marine City." The court denied the Quo Warranto request, reasoning that there was no evidence to indicate that the situation was permanent or that Lisco's did not intend to move back into Cottrellville. The court's decision relies on a determination of the intent, despite evidence that the fact of abode was not satisfied. Defendants do not challenge the admissibility of the plea-hearing transcript, which contains, information regarding whether Lisco was a resident of Cottrellville.

Consequently, the evidence shows that, by Lisco's own admission, she did not actually reside in Cottrellville. Her intent to reside there in the future is relevant, but it is not the first consideration. We conclude that Lisco's admission regarding her living situation created a genuine question of material fact whether she was an "inhabitant" of Cottrellville as the term is used in MCL 201.3(4), as she had no abode in that location. Despite Lisco's ownership of property in Cottrellville, her failure to 'reside' there constituted "sufficient facts and grounds and sufficient apparent merit to justify further inquiry" by quo warranto proceedings. See *Hanlin*,

299 Mich App at 238. The trial court therefore abused its discretion by denying Zoran's request to add the quo warranto claim.


### III. INTENTIONAL VIOLATION OF OMA

Plaintiffs argue that the trial court erred when it granted summary disposition in favor of defendants on the issue of Lisco's personal liability for the violations of the OMA. We agree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Lavigne v Forshee*, 307 Mich App 530, 535; 861 NW2d 635 (2014). "Under MCR 2.116(C)(10), the motion is properly granted 'if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. (citation omitted). There is a genuine issue of material fact if, when viewing the evidence in the light most favorable to the nonmovant, reasonable minds could differ on the matter. *Id*. The movant must identify the issues for which there is no genuine issue of material fact, and must present evidence, such as affidavits, depositions, and other documents, in support of the motion. *Id*. "If the moving party meets its initial burden, the opposing party then has the burden of showing with evidentiary materials the substance of which would be admissible that a genuine issue of disputed material fact exists." *Id*.

MCL 15.273(1) provides, "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." An intentional violation of the OMA requires specific intent. *People v Whitney*, 228 Mich App 230, 254; 578 NW2d 329 (1998). "Intent can be inferred from the totality of the circumstances." *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 255; 621 NW2d 450 (2000). "[T]he most probative evidence of intent consists of objective evidence of what actually happened rather than descriptive evidence of the subjective state of mind of the actor." *Id*.

In *Whitney*, the defendants were convicted under MCL 15.272, which provides that the intentional violation of the OMA is a misdemeanor. See MCL 15.272; *Whitney*, 228 Mich App at 233-234. This Court held that the elements of intentional violation of the OMA are "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." *Id*. at 253. This Court reiterated in *Whitney* that "[a] specific intent crime requires a particular criminal intent beyond the act done, while a general intent crime requires merely the intent to perform a proscribed physical act." *Id*. at 254. This Court stated, "[A]s an essential element of the crime of intentionally violating the OMA, an offender must have a subjective desire to violate the OMA or knowledge that the offender is committing an act violative of the OMA." *Id*. at 256. Furthermore, " '[p]erformance of the physical act proscribed in the statute is not enough to sustain a conviction. The act must be coincident with an intent to bring about the particular result the statute seeks to prohibit.' " *Id*. at 256 (citation omitted). This Court held that recklessness or knowledge that there was a risk of violating the OMA is insufficient to establish intent to violate the OMA. *Id*.

Because we find a genuine question of fact as to whether Lisco knew she was violating the OMA, the trial court erred in granting summary disposition in favor of defendants. The parties agree that Lisco is a public official and that there were violations of the OMA. The trial court ruled that defendants violated the OMA when (1) Lisco did not allow plaintiffs to speak for the full three minutes, and (2) Lisco prevented Adams from speaking because he refused to provide his address. Thus, the sole issue on appeal is whether Lisco intentionally violated the OMA when she failed to allow plaintiffs to speak for the full three-minute period and prevented Adams from continuing to speak because he did not provide her with his address.

Lisco had a copy of the policy in front of her during the board meeting. Lisco explained during her deposition that the policy is mandatory. She believed that the policy is clear. Lisco believed that the policy provides that residents have three minutes of presentation time during a public session. Lisco had the duty to remind the residents of the policy. Lisco was responsible for determining whether the residents followed the policy. Lisco also kept track of the time that each person was allowed to speak during the meeting. Lisco acknowledged that the public participation policy was put into place because of the OMA. Lisco further acknowledged that she reviews OMA requirements when there is an issue involving how they are to be applied. However, the fact that Lisco knew that the policy was put into place in order for Cottrellville to comply with the OMA does not necessarily indicate that she knew that her actions violated the OMA.

Zoran, Adams, and Sunday made comments that were favorable to Zoran and critical of Lisco and the board. However, Lisco explained during her deposition that she did not believe that she had stopped anyone other than Sunday from speaking before the person's allotted time to speak was finished. The board did not have a formal method for keeping track of time, and Lisco would inform a resident when his or her time to speak had passed. Thus, some evidence supports that Lisco did not know that she was violating the OMA with regard to Zoran and Adams since she did not know that she stopped Zoran and Adams from talking prematurely. Potentially contradicting Lisco's explanations, however, is the fact that the amount of time by which these speakers were shorted was not *de minimus*: Adams was allotted half of the allotted time and Zoran was allotted two-thirds of the allotted time. Furthermore, they were cut off in the middle of criticising Lisco, giving rise to an inference that they were cut off in response to harsh commentary they made about Lisco. None of these facts are conclusive, but they are suggestive that Lisco shortened these speakers' times with intent to violate the OMA.

Regarding Sunday, Lisco explained that she believed that her actions were lawful because she believed that Sunday violated the policy when he attacked her in a personal manner at the meeting. She stated that she believed that the policy prevents personal attacks and that she had the ability to stop Sunday from speaking. However, Lisco did not consult the OMA guidelines when she halted Sunday from speaking further. Again, these facts are not necessarily conclusive, and it is certainly possible that Lisco was merely mistaken, but Lisco's statements that she was responsible for reviewing and applying OMA requirements conflicts with her claimed ignorance of those guidelines. Context suggests that it is also possible she was more concerned with silencing the personal attack than making certain she was following the rules.

Furthermore, some evidence supports that Lisco intentionally violated the guidelines when she required Adams to provide his address before continuing to speak. At the beginning of

-5-

the meeting, Lisco instructed the public that anyone could address the board, but that each individual would need to give his or her name and address before speaking. Thus, the address requirement was not initially directed solely at Adams. However, Lisco's actual application of the requirement again suggests possible ulterior motives. Lisco initially permitted Adams to speak without providing an address, but demanded an address midway through Adams's allotted time, as Adams was criticizing Lisco, and cut Adams off despite Zoran protesting that an address was not a requirement. The manner in which she did so, and the timing thereof, suggests that she terminated Adams's time for reasons other than an evenhanded application of the guidelines. Ultimately, we conclude that the evidence raised a genuine question of fact whether Lisco knew she was violating the OMA when she prevented these speakers from using their full allotments of time. Consequently, the matter should be resolved by the trier of fact rather than being summarily dismissed.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens