*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GREGORY CORNELL ANDERSON,

Defendant-Appellant.

UNPUBLISHED
May 11, 2026
10:39 AM

No. 373729
Wayne Circuit Court
LC No. 24-001413-01-FC

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals his jury-trial convictions of two counts of armed robbery, MCL 750.89, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 81 months to 20 years for armed robbery, along with a consecutive two-year term for felony-firearm. We affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

The charges in this case arise from a traffic-related incident that escalated into a confrontation. Defendant was driving a Chrysler 300 on Evergreen Road in Detroit with his fiancée, Ishsa Lankford, in the passenger seat. Defendant stopped the vehicle in the roadway, and as a Chevrolet pickup truck passed on his left, defendant drove the Chrysler 300 into the passenger side of the pickup truck while making a left turn. Wilbert McKeever, Jr., was driving the pickup truck and was accompanied by his fiancée, Sanya Watson, who was in the passenger seat.

While McKeever was outside inspecting the damage, defendant ran toward him with a black pistol in his hand and shouted obscenities. Defendant hit McKeever in the chest with the gun, saying, "[m]other [f]*****, I should kill you," and blamed McKeever for hitting his car. Watson saw defendant point the gun at McKeever. Defendant searched McKeever's pockets and took approximately $350 to $400, two gold necklaces, and McKeever's phone. Defendant then opened the pickup truck's driver door and searched the center console while pointing the gun at Watson. Watson believed defendant also attempted to take her emotional support dog, which was in a small dog carrier. As defendant walked away, McKeever asked for his phone, and defendant

-1-

threw it in the street. Defendant continued to threaten McKeever as defendant walked away. McKeever drove to a nearby police precinct while Watson called the police.

Officer Kenneth Burley of the Detroit Police Department was informed of the incident by an unknown bystander who witnessed the event from her vehicle. Officer Burley was told defendant was driving a white Chrysler 300 with tinted windows, which Burley found parked at a home on Evergreen Road where defendant and Lankford lived. Officer Burley waited for additional police units, knocked on the door, and announced his presence. Lankford opened the door, and Officer Burley observed defendant and Jeron Binion, defendant's nephew, in the living room. Officer Burley ordered everyone to exit the house, and they complied. Lankford gave verbal consent to search the residence. Officers then conducted what Officer Burley described as "a protective sweep." During the search, Officer Burley found a black pistol on a dresser upstairs and removed it, unloading a bullet from the chamber. A holster was also recovered. Lankford accompanied Officer Burley during the search and observed the seizure of the gun. Later that day, Officer Melad Abed executed a search warrant at the residence and found McKeever's two gold necklaces on a dining table. The stolen money was not recovered.

When later interviewed by Detroit police, defendant admitted he had a gun and holster at the time of the incident but denied pointing it at anyone or taking McKeever's money. He claimed McKeever gave him the necklaces "as compensation" for vehicle damage.

Officer Burley testified about the initial search of defendant's residence at trial, stating:

> I asked [Lankford] was there any other individuals in the house, she stated yes. I observed two black males in the living room. I had ordered everybody out of the house. Once the individuals [were] outside I did detain both, both males until our investigation was over. I asked her was anybody else in the house again, she said no. She gave us consent to, to search the home. So we, we conducted a protective sweep, okay.

Officer Burley explained that he conducted a protective sweep to ensure everyone was safe inside because of the armed robbery investigation. Binion and Lankford testified that they witnessed the incident but denied defendant pointed the gun at anyone.

Defendant was convicted on all counts. At sentencing, defense counsel objected to the assessment of 10 points for Offense Variable ("OV") 4, arguing insufficient evidence supported the score. The trial court deferred ruling until after hearing victim statements. During his victim statement, McKeever described having to seek medical treatment for his "mental state," including therapy, and that he experienced paranoia after the incident. Watson stated her sister died just before the incident and that defendant "really interrupted [her] life." In the presentence investigation report (PSIR), Watson stated she was diagnosed and receiving treatment for post-traumatic stress disorder (PTSD) after the incident. No further discussion occurred regarding OV 4, and the trial court sentenced defendant. This appeal followed.

## II. ANALYSIS

Defendant argues on appeal that (1) his Fourth Amendment rights, US Const, Am IV, were violated when police searched his home because a protective sweep was not justified and the seized

gun should have been suppressed; (2) defense counsel was ineffective for failing to seek suppression of the gun; and (3) the trial court erred in assigning 10 points for OV 4. We find no error warranting reversal of defendant's convictions or sentences.

## A. FOURTH AMENDMENT AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his Fourth Amendment rights were violated when police initially searched the residence without consent. Defendant also argues that the search could not qualify as a protective sweep because no factual basis or exigent circumstance justified such police action, and therefore the firearm seized should have been suppressed at trial. None of these arguments warrants relief.

Defendant did not object to the admission of the firearm or move to suppress it, leaving the issue unpreserved for appellate review. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014); *People v Gentner, Inc*, 262 Mich App 363, 368-369; 686 NW2d 752 (2004). Unpreserved issues of constitutional error are reviewed for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "[U]nder the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. The third requirement burdens the defendant with showing they were prejudiced by the error. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021), citing Const 1963, art 1, § 11; US Const, Am IV. To invoke the constitutional prohibition against unreasonable searches and seizures, a defendant must have a reasonable expectation of privacy in the location being searched. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). Evidence taken in violation of the right against unreasonable searches and seizures is generally inadmissible at trial. *Id*. at 473.

"Consent permits a warrantless search so long as it is unequivocal, specific, and freely and intelligently given." *People v Rodriguez*, 327 Mich App 573, 584; 935 NW2d 51 (2019) (quotation marks omitted). It is the prosecutor's burden at trial to establish that consent to search was given. *People v Wagner*, 104 Mich App 169, 176; 304 NW2d 517 (1981). To determine whether consent is valid, a court must weigh the totality of the circumstances. *Id*.

Generally . . . consent must come from the person whose property is being searched or from a third party who possesses common authority over the property. Common authority is based on mutual use of the property by persons generally having joint access or control for most purposes. Further, a third party without actual authority to consent to a search may render a search valid if the police officer's belief in the authority to consent was objectively reasonable. However, the consent of a third party does not render a search valid if the other party is present

and expressly objects to the search. Although a police officer may not remove someone from the premises for the purpose of preventing an objection, the officer is not required to locate an absent person to obtain the person's consent. [*Brown*, 279 Mich App at 131-132 (cleaned up).]

It is uncontested that police did not have a warrant for the initial search. The record reflects two potential justifications: consent and a protective sweep. Officer Burley testified that Lankford consented to a search of the home, and it is undisputed that she lived there. Officer Burley also stated that he and the other officers "conducted a protective sweep." The search must be justified under one of these two theories.

In this case, the prosecution met its burden in establishing that consent was unequivocally and freely given to the police. The prosecution's primary support in establishing that the police had consent to enter the home was Officer Burley's testimony stating Lankford consented to searching the home. No objections or contradictions were offered to this testimony, and no additional evidence suggested that Lankford did not consent to the initial search.

That said, other testimony provides context suggesting that potentially coercive police actions may have influenced Lankford's consent, including the detention of defendant and Binion and the order that occupants exit the home. Coercive police tactics may invalidate consent if they undermine its voluntariness. *People v Farrow*, 461 Mich 202, 204; 600 NW2d 634 (1999). We therefore must resolve whether those circumstances rendered Lankford's consent defective.

We conclude that they did not. In *People v Hughes*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367172); slip op at 1, this Court addressed similar facts where police arrested the defendant outside of his home before obtaining his mother's consent to a search. This Court considered whether the mother's statement that police could check whether the grandmother was inside permitted the police to seize firearms found in the house. *Id*. at ___; slip op at 3. Relying on minimal testimony, this Court concluded that the consent may have been limited to finding the grandmother, meaning the seizure of the guns fell outside its scope. *Id*. at ___; slip op at 4. But this Court did *not* find that the mother's consent was compromised by the concurrent arrest of the defendant.

Here, there is even less testimony suggesting limitation or coercion. Nothing in the record indicates that Lankford restricted the scope of her consent. Although the detention of defendant and Binion may have influenced her decision, there is little evidence that police actions rendered her consent involuntary. Notably, Lankford accompanied officers throughout the search, indicating she had ample opportunity to limit or revoke her consent but did not do so. Consent to search may be revoked "at any time," *People v Powell*, 199 Mich App 492, 500; 502 NW2d 353 (1993), yet Lankford did not withdraw it. Accordingly, the prosecution met its burden in establishing that consent was "unequivocal, specific, and freely and intelligently given." *Rodriguez*, 327 Mich App at 584 (citation omitted). Because consent justified the search, we need not address whether it was also justified as a protective sweep.

Defendant also argues that defense counsel was ineffective for failing to move to suppress the firearm. For similar reasons, this argument also fails. Because defendant did not move for a new trial or evidentiary hearing, the issue is unpreserved. *People v Sabin (On Second Remand)*,

242 Mich App 656, 658; 620 NW2d 19 (2000); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). To establish ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Because this issue is unpreserved, our review is limited to "errors apparent on the record." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

Defendant's argument depends entirely on the premise that the search was unlawful. Because the search was supported by valid consent, a motion to suppress would have failed. Counsel is not ineffective for failing to raise a meritless argument. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Moreover, even without the firearm, the victims' testimony independently established defendant's guilt. Defendant therefore cannot show a reasonable probability of a different outcome.

## B. OV 4

Defendant argues the trial court clearly erred by assigning 10 points for OV 4 because there was insufficient evidence of psychological injury. We disagree.

"OV 4 should be assigned 10 points when serious psychological injury requiring professional treatment occurred to a victim." *People v Lampe*, 327 Mich App 104, 113; 933 NW2d 314 (2019) (cleaned up); MCL 777.34(1)(a). Serious psychological injury may include "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). A trial court may not assign 10 points to OV 4 merely because psychological injury is a typical outcome of the crime or because a victim experienced fear while the crime was being committed. *Lampe*, 327 Mich App at 114. Although not dispositive, "evidence that a victim sought counseling may be considered." *Id*.

Statements from McKeever and Watson at sentencing sufficiently support the trial court's scoring of OV 4. McKeever stated that he sought treatment for his "mental state," including therapy, and experienced paranoia after the incident. He also said that he was "constantly looking over his shoulders." This evidence reflects psychological injury, including paranoia and personality changes, supporting the trial court's assessment of 10 points. Watson's statements likewise support the score. In the PSIR, she reported that she was diagnosed and receiving treatment for PTSD as a result of the incident. This evidence further supports the conclusion that serious psychological injury occurred. See *People v Rosa*, 322 Mich App 726, 745; 913 NW2d 392 (2018) (holding that evidence of a "terrifying" experience and subsequent counseling supported scoring OV4). Accordingly, the trial court did not clearly err in assigning 10 points for OV 4.

## III. CONCLUSION

Defendant has not established that police lacked consent for the initial search of the residence and therefore has not shown that admission of the firearm was erroneous. Accordingly, defense counsel was not ineffective for failing to seek suppression of the firearm, and defendant cannot demonstrate prejudice. Moreover, the trial court properly assessed 10 points for OV 4.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman