*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

ZACHARY JOSEPH ZABAVSKI,

    Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 338317
Kent Circuit Court
LC No. 15-011294-FH

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant, Zachary Joseph Zabavski, appeals by right his jury trial convictions of three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (incapacitated victim); and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (incapacitated victim). Defendant was sentenced to 7 to 15 years' imprisonment for each of the three counts of CSC-III, and 16 to 24 months for the CSC-IV conviction. We affirm defendant's convictions, vacate his sentence, and remand for resentencing.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

Defendant was drinking alcoholic beverages with his friend at a house where the victim was asleep in her bedroom. Earlier in the night, the victim had become severely intoxicated and her friends put her to bed. One of the victim's friends continued to check on her, noting that she had vomited in her bed. During one such check-up, the friend discovered defendant, naked, jumping out of the victim's bed. The victim's pants and underwear had been removed. The victim testified that she had been passed out when she awoke to defendant on top of her, where he kissed her mouth and penetrated her vagina digitally, orally, and with his penis. Upon discovery, defendant became immediately defensive and threatened to hurt himself. His boxers were found in the victim's bedroom next to her bed, smelled of vomit, and had the victim's DNA on them.

During an interview with defendant, the police seized defendant's cellular telephone without a warrant or defendant's consent. Before trial, defendant moved the trial court to suppress the evidence the police discovered from their warrantless seizure of the device. After

-1-

first granting the motion to suppress, the trial court reconsidered its opinion and denied the motion, reasoning that although the cellular telephone was seized in violation of the Fourth Amendment, the evidence still was admissible under the inevitable discovery or attenuation doctrines. Defendant was then tried and convicted as noted, *supra*.

After trial, defendant moved the trial court for a new trial, citing a multitude of errors he argued amounted to constitutionally deficient assistance of counsel. Following a two-day *Ginther*[1] hearing, the trial court denied the motion for a new hearing, reasoning that trial counsel's performance had not been objectively unreasonable. This appeal followed.

## II. UNCONSTITUTIONAL SEIZURE OF CELLULAR TELEPHONE

Defendant argues that the trial court erred in denying his motion to suppress evidence police recovered from his cellular telephone. We agree but nevertheless affirm because the error was harmless.

## A. STANDARD OF REVIEW

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). "The trial court's findings of fact from a suppression hearing are reviewed for clear error, according deference to the trial court's determination." *Id*. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Any ancillary questions of law relevant to the motion to suppress are also reviewed de novo." *Id*.

To the extent this Court finds that a constitutional error has occurred, "[w]e review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt." *People v Dendel (On Second Remand)*, 289 Mich App 445, 475; 797 NW2d 645 (2010). "A constitutional error is harmless if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 475 (quotation marks and citations omitted).

## B. APPLICABLE LAW & ANALYSIS

Both the United States and Michigan Constitution guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "[A] search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (quotation marks omitted). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v Jacobsen*, 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984). The lawfulness of a search

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

and seizure depends on whether it is reasonable. *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014). Generally, searches and seizures conducted without a warrant are unreasonable per se. See *Lavigne v Forshee*, 307 Mich App 530, 537; 861 NW2d 635 (2014).

During a voluntary police interview, Detective Amy Lowrie of the Grand Rapids Police Department forced defendant to relinquish his cellular telephone and refused to return it to him. Detective Lowrie did not have a warrant to seize the telephone. She later obtained a search warrant, and other police officers searched the contents of the telephone and retrieved incriminating text messages and information about two potential witnesses from the telephone. Defendant moved to suppress the contents of the telephone. The trial court held that the seizure violated the Fourth Amendment and suppressed the evidence. The trial court then reversed its decision and held that the contents of the cellular telephone were admissible under the inevitable discovery doctrine and the attenuation doctrine.

In this case, the parties do not dispute that seizure of defendant's telephone without a warrant amounted to a violation of the Fourth Amendment. "Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009) (quotation marks omitted). "Exclusion of improperly obtained evidence serves as a deterrent to police misconduct, protects the right to privacy, and preserves judicial integrity." *Id*. (quotation marks omitted). Moreover, the exclusionary rule extends not only to evidence seized in violation of the Constitution, but also to "evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called 'fruit of the poisonous tree' doctrine." *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999).

However, there are exceptions to the exclusionary rule. One such exception is the inevitable discovery doctrine. *Hyde*, 285 Mich App at 439. This Court has described the inevitable discovery doctrine as follows:

> The inevitable discovery doctrine, as applied by Michigan caselaw, permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner. Three concerns arise in the inevitable discovery analysis: (1) whether the legal means are truly independent, (2) whether both the use of the legal means and the discovery by that means are truly inevitable, (3) and whether the application of the inevitable discovery doctrine provides an incentive for police misconduct or significantly weakens Fourth Amendment protections. [*Id*. at 439-440 (citations omitted).]

In this case, the trial court clearly erred in finding that the contents of the cellular telephone would have been inevitably discovered irrespective of the illegal seizure. The prosecution did not produce evidence at the evidentiary hearing to show that the police would have recovered the text messages and information concerning the two witnesses absent the illegal seizure. Detective Lowrie testified that if she had not seized the telephone, she would have obtained a warrant for defendant's residence and his telephone records. However, there was no evidence presented to show what these records would have revealed. The prosecutor did not present copies of subpoenaed records to allow the trial court to determine that there was an

independent means of obtaining the information on the cellular telephone and that police would have inevitably discovered that information. Indeed, at the evidentiary hearing when asked if she would have recovered the text messages without having first seized the cellular telephone, Detective Lowrie stated, "I don't know how much text messages, but yes, I would have gotten the call logs and the text logs." This was not proof sufficient to show that, absent the illegal seizure, discovery of the cellular telephone contents was "truly inevitable." *Id.* at 439.

Moreover, application of the inevitable discovery doctrine in this instance would provide "an incentive for police misconduct or significantly weaken[] Fourth Amendment protections." *Id.* In this case, police seized defendant's cellular telephone without first obtaining a warrant. This violated defendant's Fourth Amendment right against unreasonable seizure. Applying an exception to the exclusionary rule on the basis of an officer's testimony that, absent the improper seizure, she would have simply obtained records from a telephone provider without any prior proof of what those records could establish, encourages police to bypass the procedural protections of the Fourth Amendment and obtain incriminating information. Failing to impose recriminations for the improper seizure simply weakens police incentive to adhere to the warrant requirement of the Fourth Amendment.

In addition, the trial court erred in concluding that the attenuation exception to the exclusionary rule applied in this case. "Under the attenuation exception to the exclusionary rule, exclusion is improper when the connection between the illegality and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. . . ." *People v Frazier*, 478 Mich 231, 253; 733 NW2d 713 (2007) (quotation marks and citations omitted). "Attenuation can occur when the causal connection is remote or when the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.* (quotation marks omitted).

In this case, the connection between the unlawful seizure of the cellular telephone and police discovery of the contents of the telephone was not "so attenuated as to dissipate the taint" of the unlawful seizure. *Id.* (quotation marks omitted). The unlawful seizure led to the subsequent search and discovery of the names of two witnesses and the incriminating text messages. This was not a significant attenuation between the seizure and the subsequent discovery as the discovery flowed from the unlawful seizure. See *id.*

Although the trial court erred in finding that the evidence was admissible under the attenuation doctrine and the inevitable discovery doctrine, the error was harmless because it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Dendel (On Second Remand)*, 289 Mich App at 475 (quotation marks omitted). In this case, apart from the witnesses' testimonies about the text messages they received, and apart from the police officers' testimony about the text messages on defendant's telephone, there was substantial evidence of defendant's guilt.

At trial, evidence showed that Hunter Powers invited defendant to the victim's home on the evening of the assault. Powers testified that defendant consumed alcohol. Defendant was at the home with Powers while other party attendees were at a bar. Keith Hall testified that upon returning to the home, defendant was inviting women over to the home and was "trying to get laid." Hall testified that he checked on the victim, who had become intoxicated and went to bed

-4-

early, several times during the evening to ensure her wellbeing, and on these occasions, the victim was fully clothed. Hall testified that he checked on the victim one last time before going to bed. This time, Hall observed defendant "jump" up naked. Hall then notified Mary White and Mitchell Nuiver who returned with Hall to the victim's bedroom. The door was closed. Upon entering the room, all three witnesses observed defendant naked in the victim's bedroom. Hall explained that defendant was naked and was lying in the victim's bed. The victim's pants and underwear were removed and the victim awoke, yelled at defendant, and tried to push him out of her bed. Witnesses testified that defendant's underwear was located near the victim's bed.

In addition, the victim testified that she awoke to find a man on top of her. The man licked her vagina and penetrated her vagina with his fingers. The victim testified that she felt the man's penis inside her vagina, and then she tried to push the man off her. Further, a nurse examiner testified that the victim had an abrasion on her labia, which was consistent with sexual assault. Given the overwhelming evidence of defendant's guilt, it is "clear beyond a reasonable doubt" that a rational jury would have found defendant guilty absent the trial court's erroneous ruling with respect to contents of the cellular telephone. *Id*.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial due to the ineffective assistance of his trial counsel. We disagree.

### A.  STANDARD OF REVIEW & GENERAL LAW

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Gingrich*, 307 Mich App at 661 (quotation marks omitted).

To establish ineffective assistance of counsel, a defendant must show that (1) counsel rendered assistance that "fell below an objective standard of reasonableness" under the prevailing professional norms, and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000) (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks omitted). Furthermore, "[b]ecause the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id*.

Following his convictions, defendant moved for a new trial, arguing that trial counsel was ineffective. The trial court held a *Ginther* hearing and then denied defendant's motion. On appeal, defendant argues that the trial court erred. Defendant claims that trial counsel was ineffective in the following respects: (1) failing to call an expert toxicologist to testify about memory; (2) failing to investigate and present evidence regarding defendant's bodily markings;

(3) failing to object to jury instructions or request an instruction; (4) failing to call defendant in his own defense; (5) failing to adequately impeach Hall, White, and Nuiver; (6) failing to properly cross-examine the complainant; (7) failing to object to Hall's testimony that defendant was "trying to get laid"; (8) failing to provide a proper opening statement; (9) failing to object to the admission of defendant's interview with police; and (10) failing to advise defendant of plea offers before trial. Defendant argues that the combined effect of the errors denied him the effective assistance of counsel.

## B. FAILURE TO CALL AN EXPERT WITNESS

Defendant argues that trial counsel was deficient in failing to call an expert to discuss memory. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). A defense counsel's failure to present a witness may constitute ineffective assistance only where it "deprives the defendant of a substantial defense." *Russell*, 297 Mich App at 716 (quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks omitted).

In this case, trial counsel did consider calling an expert toxicologist, but she changed her mind after the defense theory was that defendant did not have sexual contact with the victim. This did not fall below an objective standard of reasonableness. At the *Ginther* hearing, an expert testified about fragmented memory, but that testimony did not amount to a substantial defense. The testimony concerned common, everyday knowledge about the impact that alcohol can have on a person. The jury was aware that the victim's memory was impacted in this case because the victim testified that she began drinking early in the day and then did not remember anything until she was awakened by a man who was on top of her. The jury was therefore aware that the victim had issues with her memory. It was not deficient strategy for trial counsel to pursue a different defense. Trial counsel attempted to show inconsistencies in the victim's testimony, that the witnesses were unreliable, and that defendant's DNA was not on the underwear found near the victim's bed. Failure to call a toxicologist did not deny defendant a substantial defense and trial counsel was not ineffective in this respect. See *id*.

## C. EVIDENCE OF BODILY MARKINGS

Defendant argues that trial counsel was deficient in failing to present evidence that he had a cut on his buttocks and a large tattoo on his torso. This argument lacks merit.

At the *Ginther* hearing, trial counsel testified that she was aware of the bodily markings, but she decided not to present photographic evidence because she did not want to call defendant's mother as a witness to lay a foundation. Instead, trial counsel asked White whether she saw any tattoos or injuries on defendant, and asked Nuiver whether he saw a tattoo or an injury on defendant's body. Therefore, it was apparent that trial counsel investigated and considered the markings, but she decided not to pursue an identification defense by introducing photographs. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76;

601 NW2d 887 (1999). Trial counsel's strategic decision was not deficient considering that three witnesses testified that they saw defendant naked in the victim's bedroom. Moreover, "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77.

## D. JURY INSTRUCTIONS

Next, defendant argues that trial counsel was ineffective for failing to object to the trial court's instruction on "physically helpless." This argument lacks merit.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law." *Id*. "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id*. "Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id*.

Defendant was convicted of CSC-III pursuant to MCL 750.520d(1)(c), which provides as follows:

(1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

* * *

(c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

The statue defines "physically helpless" as follows:

"Physically helpless" means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." [MCL 750.520a(m).]

In this case, in defining "physically helpless," the trial court relied on M Crim JI 20.11, which provides, in relevant part:

(5) Physically helpless means that [*name complainant*] was unconscious, asleep, or physically unable to communicate that [he / she] did not want to take part in the alleged act.

The trial court's instruction mirrored the language in the relevant statute. The instruction "sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Dobek*, 274 Mich App at 82. Accordingly, the trial court properly instructed the jury regarding the law in this case, and trial counsel was not ineffective in failing to raise an

-7-

objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### E. FAILURE TO CALL DEFENDANT AS WITNESS

Next, defendant argues that trial counsel was deficient in failing to allow him to testify at trial. This argument lacks merit.

A criminal defendant has a constitutional right to testify in his own defense at trial. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id*. "On the other hand, if defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (quotation marks omitted). Counsel's advice not to testify is presumed to be a matter of trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

In this case, the evidence showed that defendant acquiesced to trial counsel's advice that he not testify at trial. Trial counsel testified that defendant did not indicate a desire to testify and defendant did not inform the trial court that he desired to testify. Although testimony showed that trial counsel used colorful language in advising defendant about taking the stand, trial counsel sufficiently advised defendant that he could testify if he wanted. There is no evidence that defendant expressed his desire to testify after being advised by counsel. Therefore, the record supports the trial court's finding that defendant waived his right to testify, and defendant has not shown that trial counsel was ineffective in this respect

### F. CROSS-EXAMINATION OF WITNESSES

Next, defendant argues that trial counsel was ineffective in her cross-examinations of Hall, White, Nuiver, and the victim. This argument lacks merit.

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. A review of the record shows that trial counsel's questioning of the witnesses did not fall below an objective standard of reasonableness. Trial counsel questioned the victim about how much she had to drink on the day of the assault and whether she remembered certain things that happened before, during, and after the assault. Trial counsel also questioned her whether she recalled specifics about the assault, whether she recalled people who entered the room, and whether people told her about events that happened that night. Trial counsel highlighted the victim's inconsistent statements after the assault by questioning her whether she told emergency room personnel that she did not recall what happened, and whether she did not indicate to police that a penis penetrated her vagina. These questions illustrated that the victim had fragmented memory about the events that occurred on the day of the assault and the questioning was not deficient.

In addition, contrary to defendant's contention, trial counsel's recross-examination of the victim was not deficient. Trial counsel asked the victim if she recalled any distinguishing features of the assailant. The victim responded, "I remember his hair, his penis, and that's about

it." According to defendant, the victim pointed at defendant when she answered this question. Defendant argues that trial counsel should have introduced photographs showing that his hair was different at the time of the assault. However, even assuming that there was a photograph showing that defendant's hair was longer at the time of the assault, defendant cannot show that the failure to introduce the photograph fell below an objective standard of reasonableness. Trial counsel could have decided that it was not beneficial to call a witness to provide foundation for the photograph. Trial counsel could have decided that this would simply draw more unfavorable attention to the issue. Moreover, trial counsel was not advancing an identity defense. Instead, the defense theory was that defendant did not make sexual contact with the victim. Finally, defendant cannot show that failure to introduce a photograph of the hair impacted the outcome of the proceeding in this case when three witnesses testified that they saw defendant naked in the victim's bedroom. See *Carbin*, 463 Mich at 600.

Similarly, trial counsel's questioning of Hall, White, and Nuiver did not fall below an objective standard of reasonableness. We will not second-guess trial counsel's strategic decisions relating to the questioning of these witnesses. See *Benton*, 294 Mich App at 203. Specifically, trial counsel cross-examined the witnesses in a manner that she deemed was best suited to the facts and circumstances. She asked the witnesses relevant questions and questioned them in a manner that would cast doubt on the victim's testimony that defendant sexually assaulted her when he was in the bedroom. While defendant contends that trial counsel should have asked different questions, questioning of witnesses is a matter of trial strategy that this Court will not second-guess with the benefit of hindsight. See *id*. Defendant has failed to show that trial counsel's strategy fell below an objective standard of reasonableness.

## G. FAILURE TO RAISE OBJECTIONS

Defendant argues that trial counsel was ineffective when she failed to object to evidence on two separate occasions.

Defendant contends that trial counsel was ineffective for failing to object when Hall testified that defendant was "trying to get laid" when defendant invited women to come over to the house. Specifically, during direct examination, in response to the prosecution's question whether defendant was "talking about sex," Hall testified that defendant "was trying to get laid. He was like, let's have these girls over for sure." Defense counsel did not object. On cross-examination, defense counsel questioned Hall about whether defendant may have simply been attempting to brag when he was talking about inviting women over. However, the trial court sustained the prosecution's objection based on speculation.

Defendant fails to present any citation to law to support that Hall's testimony was inadmissible. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant's failure to cite any authority to support his argument amounts to abandonment of this argument. Moreover, decisions whether to object are matters of trial strategy. Indeed, "there are times when it is better not to object and draw attention to an improper comment." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (quotation marks omitted). In this case, trial counsel could have decided that it would be better

to question Hall about his statement on cross-examination as opposed to raising an objection. Although the trial court upheld the prosecution's objection, trial counsel's strategy with respect to the statement was not deficient.

Defendant also argues that trial counsel was ineffective when she failed to object to the admission of his redacted police interview. Defendant does not contend that trial counsel should have objected on constitutional grounds, but rather contends that the statement was not admissible under MRE 801(d)(2) because the statements were not an "admission" in that he did not admit to any elements of the charged offenses. However, defendant's statements during the police interview were offered against defendant, they were defendant's own statements, and they did not concern a motor vehicle violation or infraction. Therefore, the statements were admissible under MRE 801(d)(2) and trial counsel was not deficient for failing to object on that basis. See *Ericksen*, 288 Mich App at 201.

## H. VOIR DIRE/OPENING STATEMENT

Next, defendant argues that trial counsel was ineffective during voir dire and during her opening statement. Specifically, defendant argues that trial counsel "forfeited the defendant's presumption of innocence and relieved the People of their burden to prove to each and every element beyond a reasonable doubt." These arguments lack merit.

With respect to voir dire, defendant cites to a transcript page that contains nothing to support that trial counsel conceded the presumption of innocence. At one point on the previous page, trial counsel asked a prospective juror, "[a]ny problems with the concept of beyond a reasonable doubt?" Trial counsel also asked the same prospective juror if she would have any problems with "the fact that you might not hear anything from the defense?" Defendant fails to articulate how these or other questions or statements during voir dire amounted to forfeiture of the presumption of innocence. Furthermore, the trial court instructed the jury on the presumption of innocence, and "jurors are presumed to follow their instructions . . . ." *Unger*, 278 Mich App at 235 (citation omitted). Accordingly, defendant cannot show that any improper statement during voir dire impacted the outcome of the proceeding.

Defendant also argues that trial counsel was ineffective by making an opening statement that "forfeited the defendant's presumption of innocence" and was "so perfunctory as to constitute a waiver of the opening." This argument lacks merit.

Decisions regarding opening statements are matters of trial strategy "over which counsel is given wide discretion." *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007). Having reviewed the opening statement, we conclude that there is nothing in the statement that "forfeited" the presumption of innocence and defendant fails to articulate how the statement amounted to such forfeiture. Trial counsel had broad discretion regarding the opening statement. She provided an opening statement that she deemed best suited to create reasonable doubt in the minds of the jurors. Defendant has not shown that her conduct fell below an objective standard of reasonableness. See *id*.

## I. PLEA NEGOTIATION

Next, defendant argues that trial counsel was ineffective before trial because she did not explain the sentencing guidelines or the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, such that defendant was not given the opportunity to accept a plea offer. Defendant argues that trial counsel was ineffective because she did not properly advise him about the plea offer and did not properly articulate the potential prison sentence that defendant could face if he went to trial and lost. This argument lacks merit.

"The decision to plead guilty is the defendant's, to be made after consultation with counsel and after counsel has explained the matter to the extent reasonably necessary to permit the client to make an informed decision." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). Trial counsel is not required to recommend whether to accept a plea offer; instead, "[t]he test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea." *Id*.

In this case, at the *Ginther* hearing, trial counsel agreed that the prosecution offered a plea agreement to allow defendant to plead guilty to one count of CSC-III with a 12-month "cap." She could not recall if there was a potential for a no-contest plea, but she did agree that the prosecution sometimes offers that type of plea in a CSC case. Trial counsel did not recall the prosecution offering a plea under the HYTA. She did recall explaining what the HYTA was to defendant and his mother. Trial counsel testified that she discussed potential sentencing if defendant went to trial and lost. She informed defendant that his sentencing range would be 51 to 85 months. Trial counsel did not recall the prosecution offering a plea agreement to plead guilty exclusively to CSC-IV. Trial counsel testified that she did not recall specifically what she told defendant and his mother about the offer with the 12-month cap. She stated that she "would have liked that [plea offer] simply because then the defendant can control the outcome. And I would have conveyed that to defendant." Trial counsel stated she "absolutely [did] not" tell defendant that his case was "a slam dunk because there was no DNA." Rather, she informed defendant that "it was a triable case," but, "[n]ever in my life used the word slam dunk."

Trial counsel's testimony supported the trial court's finding that defendant was not denied the effective assistance of counsel during the plea negotiation phase of the proceeding. Trial counsel's testimony showed that she informed defendant of his potential exposure to a prison sentence if he were to reject the plea agreement and lose at trial. She explained that he could face 51 to 85 months in prison, which ultimately was within the 7-year (84-month) minimum sentence that defendant received in this case. Trial counsel also testified that she liked the plea offer and would have conveyed that to defendant. The record supported that trial counsel advised defendant that the plea offer was favorable and that he faced a prison sentence if he rejected the plea and proceeded to lose at trial. Trial counsel's advice was adequate to allow defendant to "make an informed and voluntary choice between trial and a guilty plea." *Id*. Trial counsel did not render deficient performance with respect to the plea negotiation.

## J. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of trial counsel's errors amounted to ineffective assistance of counsel. However, as discussed above, trial counsel's performance was not deficient in any of the aspects of the case that defendant cites on appeal. Accordingly, there

is no cumulative effect that warrants reversal and a new trial. See *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

## IV. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to support his convictions. We disagree.

## A. STANDARD OF REVIEW & GENERAL LAW

A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). When analyzing a claim of insufficient evidence, this Court views the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003) (quotation marks omitted; alteration in original). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant was convicted of three counts of CSC-III and one count of CSC-IV. Defendant was convicted of CSC-III under MCL 750.520d(1)(c), which provides as follows:

> (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> * * *
>
> (c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

For purposes of CSC-III, "sexual penetration" is defined in relevant part as:

> "Sexual penetration" means sexual intercourse, cunnilingus . . . or any other intrusion, however slight, of any part of a person's body . . . but emission of semen is not required. [MCL 750.520a(r).]

MCL 750.520e(1) proscribes CSC-IV, and it provides in relevant part:

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
>
> * * *

(c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

For purposes of both offenses, "physically helpless" "means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m). For purposes of CSC-IV, "sexual contact" is defined in relevant part as:

"Sexual contact" includes the intentional touching of the victims or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for . . . a sexual purpose . . . . [MCL 750.520a(q).]

## B. ANALYSIS

In this case, viewed in a light most favorable to the prosecution, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that the victim was "physically helpless," and that defendant knew or had reason to know that the victim was "physically helpless." At trial, the victim testified that she began drinking alcohol in the midmorning hours on October 31, 2015. She consumed a large amount of alcohol, and her friends assisted in putting her to bed in the evening. The evidence showed that the victim was severely intoxicated. Hall testified that he checked on the victim on multiple occasions throughout the night, and he was concerned that the victim would choke on vomit. The victim vomited multiple times while she was sleeping. When several of the individuals left the residence, Powers and defendant were at the home. Powers testified that he and defendant looked in on the victim to ensure her well-being. This supported that defendant knew that the victim was in a compromised, physically-helpless state. When Hall returned to the home, the victim could not get out of bed to shower. The victim testified that she did not remember anything until she was awakened to a man having sexual contact with her. This evidence would have allowed a rational trier of fact to conclude beyond a reasonable doubt that the victim was "unconscious, asleep, or for any other reason [was] physically unable to communicate an unwillingness to an act," at the time of the assault and that defendant knew or had reason to know of the victim's physically helpless state. MCL 750.520a(m).

In addition, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that defendant sexually penetrated and made sexual contact with the victim at the time he knew or had reason to know of the victim's physically-helpless state. The victim testified that she awoke to a man who was on top of her; the man penetrated her vagina with his penis and fingers, and he performed cunnilingus on the victim. See MCL 750.520h. The victim testified that the man tried to kiss her. A nurse testified that the victim had an abrasion on her labia, which was consistent with sexual assault. This was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that sexual contact and sexual penetration took place.

In addition, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that defendant was the man who committed the sexual contact and the sexual penetration. Hall testified that he entered the victim's bedroom and defendant "jumped" up and

was naked. Hall, White, and Nuiver then entered the bedroom and again found defendant in the bedroom. All three witnesses testified that defendant was naked. The witnesses testified that defendant left his underwear in the room. This evidence allowed a rational trier of fact to conclude beyond a reasonable doubt that defendant was the man that sexually penetrated, and made sexual contact with the physically-helpless victim. Accordingly, there was sufficient evidence to support defendant's convictions.

## V. SENTENCING

Finally, defendant argues that the trial court erred in assessing 10 points for offense variable (OV) 3 (physical injury to a victim). We agree.

### A. STANDARD OF REVIEW

"[T]he proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004) (citation omitted).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

### B. APPLICABLE LAW & ANALYSIS

MCL 777.33 governs the assessment of points for OV 3, and it provides that a trial court must assess 10 points when "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). The statute directs a trial court to assess 5 points when "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(d). If "[n]o physical injury occurred to a victim," a trial court must assess zero points for OV 3. MCL 777.33(1)(f).

For purposes of OV 3, a " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). An "injury requiring medical treatment" refers to "the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

In this case, there was evidence to support that the victim suffered a "bodily injury" for purposes of OV 3. The abrasion on the victim's labia amounted to evidence of "some unwanted physically damaging consequence." *McDonald*, 293 Mich App at 298. The sexual assault nurse examiner testified that the abrasion was akin to the top layer of skin rubbing off. This is evidence of an unwanted physically damaging consequence. Similarly, evidence that the victim felt pain in her vagina after the assault is evidence of an "unwanted physically damaging consequence." *Id*.

-14-

Although there was evidence that the victim suffered a "bodily injury," similar to *People v Armstrong*, 305 Mich App 230, 246; 851 NW2d 856 (2014), in this case there was no evidence that "medical treatment was necessary for [the] injury." At trial, when asked if she had any "physical complaint," the victim responded, "[n]ot really, no. Maybe a little bit painful, but it wasn't like where I can't walk . . . ." According to the victim, when she presented at the emergency room, she informed medical personnel that she was "sexually assaulted and I needed to get a rape kit done." The victim did not testify that she sought or received treatment for an injury at the emergency room. Instead, the visit was for a forensic examination. Similarly, at the YWCA, the victim did not receive treatment for the abrasion. Instead, the sexual assault nurse examiner (SANE) performed a forensic physical examination for the purposes of preparing a SANE report.[2] Like in *Armstrong*, there was no evidence in this case that the victim received, sought, or necessitated medical treatment for a bodily injury. Therefore, the trial court clearly erred in assessing 10 points for OV 3. Instead, the evidence showed that the victim suffered a bodily injury that did not necessitate medical treatment, and the trial court should have therefore assessed 5 points for OV 3. See MCL 777.33(1)(d).

The trial court's scoring error requires resentencing. With the erroneous scoring of OV 3, defendant's minimum sentencing guidelines range was 51 to 85 months. Rescoring OV 3 at 5 points reduces defendant's total OV score to 45 and reduces his OV Level to OV Level IV. MCL 777.63. The minimum sentence guidelines range for a Class-B offense with an OV Level IV and prior record variable (PRV) Level C is 45 to 75 months. MCL 777.63. Because the scoring error impacted the minimum sentence guidelines range, defendant is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

## VI. CONCLUSION

We affirm defendant's convictions, vacate his sentence, and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Anica Letica

---

[2] To clarify, we do not hold that a sexual assault victim can never have been determined to receive medical treatment, or to have suffered an injury necessitating medical treatment, when they report to a YWCA for a rape kit, but only that in the instant case there was neither testimony nor other evidence that any medical treatment actually was provided. Thus, we are bound by this Court's previous decision in *Anderson*, 305 Mich App at 246. Cf. *McDonald*, 293 Mich App at 298 (holding that OV 3 should be scored at 10 points when there is some medical treatment, even if the treatment was "precautionary," and presumably for the victim's "infection as a consequence of the rape.").